IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| LUTHER GARNER, | ) | Civil Action No.: 4:06-1355-MBS-TER |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MS. DEBBIE HIPPE; | ) | |
| MR. TOM FOX; J. REUBEN | ) | |
| LONG DETENTION CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Luther Garner, filed this action under 42 U.S.C. § 1983[1] on May 4, 2006, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the J. Reuben Long Detention Center (JRLDC) as a pretrial detainee. On  October 27, 2006, the defendants filed a motion for summary judgment along with a memorandum, exhibits, and affidavits in support of that motion. Because plaintiff is proceeding pro se, he was advised on or about October 33, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint.  The plaintiff filed a response on November 27, 2006. (Document #15). Defendants filed a reply to the response and plaintiff filed an additional reply and response.

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs. Plaintiff asserts the following in his complaint, quoted verbatim:

> Ms. D. Hippe[2] Head RN at Detention Center on 12/0/05. I explained to her that I had injuries to both of my legs due to a motorcycle accident in N.J. three years prior that was given me problems. And that I was in the process of been seen by an orthopaedic Dr. On 12/12/05 ask Ms. Hippe to be seen by outside orthopaedic. Ms. Hippe states she is only responsible for providing transportation.
>
> 2/7/06 Ms. Hippe says once again policy is only to provide transportation to physician and to be seen for an initial consultation I will need to have around $300.00 to be taken out of my account for orthopaedic to be paid before I can go there. 2/23 Ask for a copy of the jails policy stating the inmate must have the full amount of the Doctor's visit in order to be taken there.
>
> The Director Mr. Tom Fox then copies my request and write on the bottom of the paper that the jail is only responsible for transportation with no further information provided to me about jail policies.

(Complaint).

In the relief portion of his complaint, plaintiff requests the following relief, quoted verbatim:

> I allow me to find out if the Detention Center violated my rights by not allowing my outside medical attention because I didn't have the money in my account to pay first because I was a on going injury that didn't happen at the jail.

(Complaint, p. 5).

Defendants filed a motion for summary judgment arguing plaintiff's claim should be dismissed.

---

[2] It is noted from the affidavit that the correct spelling is Hipp.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by <u>pro se</u> litigants, to allow them to fully develop potentially meritorious cases.  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  <u>See</u> Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements

3

of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.   Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).   The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality.  Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S.

4

9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that while a pretrial detainee at JRLDC he was delayed outside medical treatment for leg and hip pain for six months because he could not pay for it. Plaintiff had a pre-existing medical condition in that three years prior to incarceration at the JRLDC he had broken both legs in a motorcycle accident. The breaks had required surgery and insertion of metal shafts and screws into plaintiff's right leg. Plaintiff alleges discrimination in that he was not able to get outside treatment without paying for it due to pre-existing condition while other inmates who had pre-existing conditions were able to get outside medical treatment without paying.

Plaintiff submitted three witnessed statements from inmates Phillip Rabon, Royce Williams, and Daniel Thrasher. Daniel Thrasher stated that in May and July of 2006, he was transported from JRLDC to Doctor William O'Connor's office for treatment of a pre-existing condition for which he could not pay due to his indigent status. However, Mr. Thrasher also states that Dr. O'Conner

5

referred him for further treatment but JRLDC would not give approval without Mr. Thrasher having "funds to pay or Medicaid." Mr. Thrasher states that "J. Reuben Long will not pay for treatment for pre-existing conditions."

Mr. Royce Kim Williams states that while incarcerated at JRLDC he was seen by a Chiropractor for prior medical needs. He states "Ms. Hipp made an appointment to see my doctor Mr. Rodney Arnold of Myrtle Beach. I gain this help without having to pay first for my treatment." Mr. Williams states that he has seen other inmates denied outside medical treatment due to their financial status.

Mr. Phillip Rabon states that he was detained at the JRLDC and had obtained a prior medical condition due to a car accident. Mr. Rabon states that Ms. Hipp prescribed medication for him. Mr. Rabon further states that, after he informed Nurse Hipp that he had an appointment at "Doctor's Care in Conway, S.C.," she informed him that if the doctor prescribed a Narcotic, she would not allow him to have it. However, Mr. Rabon asserts that "she allows other inmates to be given Narcotics." He contends that Ms. Hipp denies him proper health care.

Defendants filed a reply asserting that they were not indifferent to plaintiff's medical needs. Defendants contend the record reflects that plaintiff's alleged ailments were the result of a pre-existing injury which had been surgically treated, as well as degenerative changes; that plaintiff was "evaluated and found to be ambulating and in no distress, plaintiff was repeatedly given pain and muscle relaxing medications; and, that plaintiff received outside medical care on four occasions, including a steroid injection which only brought about temporary relief, an MRI, and a gel shoe insert which brought relief from pain associated with unequal leg lengths as a result of the pre-existing injury and surgical treatment." (Defendants' reply). Further, defendants argue that even if

6

a question of material fact existed as to deliberate medical complaints, plaintiff fails to articulate a medical need sufficiently serious to constitute a due process violation.

Defendants attached to their reply the affidavit of Deborah Hipp who attests that she is the Nurse Practitioner at the JRLDC. Hipp attests that the JRLDC transports people at the jail to private medical providers with whom they have an established physician/patient relationship prior to incarceration, if requested and after confirmation by healthcare staff with the outside providers. Hipp attests that Daniel Thrasher and Royce Kim Williams were both established patients of outside providers prior to their being housed at JRLDC and that JRLDC provided transportation to the offices of their established outside providers. Hipp avers that JRLDC did not pay for any services rendered by their outside providers.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional,

the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent

loss.' " <u>Coppage v. Mann</u>, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting <u>Monmouth Co.</u>

<u>Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 450 U.S.

1041 (1981)).

   Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under

42 U.S.C. § 1983. <u>Estelle v. Gamble</u>, <u>supra</u>.  Negligence, in general, is not actionable under 42

U.S.C. § 1983.  See <u>Daniels v. Williams</u>, 474 U.S. 327, 328-36 & n. 3 (1986); <u>Davidson v. Cannon</u>,

474 U.S. 344, 345-48 (1986); <u>Ruefly v. Landon</u>, 825 F.2d 792, 793-94 (4th Cir.1987); and <u>Pink v.</u>

<u>Lester</u>, 52 F.3d 73, 78 (4th Cir. 1995) (applying  <u>Daniels vs. Williams</u>  and <u>Ruefly v. Landon</u>: "The

district court properly held that <u>Daniels</u> bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under

state law.  <u>DeShaney v. Winnebago County Department of Social</u> <u>Services</u>, 489 U.S. 189, 200-03

(1989).  Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. <u>Estelle v. Gamble</u>,

<u>supra</u>, at 106 ("Medical malpractice does not become a constitutional violation merely because the

victim is a prisoner.") See also <u>Brooks v. Celeste</u>, F. 3d 125 (6th Cir. 1994) (Although several courts

prior to the Supreme Court's decision in <u>Farmer v. Brennan</u>, <u>supra</u>, held that "repeated acts of

negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.");

<u>Sellers v. Henman</u>, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows

negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty

of deliberate indifference."); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3rd Cir. 1990); and <u>Smart</u>

<u>v. Villar</u>, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).  Thus, even if the plaintiff

were able to show that defendants' actions somehow constituted medical negligence or medical

malpractice, these are not actionable under 42 U. S. C. §1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendants for not timely responding to his request for outside medical attention due to pain in his hip and leg and that he had to pay for outside treatment. Although plaintiff did not agree with the type of treatment he received, the fact is plaintiff was provided treatment and medication was prescribed for the pain at JRLDC. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendants' failure to conform to the standard, or the issue of proximate cause.

Based on the evidence, there has been no deliberate indifference shown to the overall medical

needs of the plaintiff. A review of plaintiff's medical records submitted by the defendants reveal plaintiff received examinations and medication. Further, he did receive treatment from an outside orthopaedist at Coastal Orthopaedic Associates which included an injection, a MRI, medication, and a gel insert. Based on an office note dated May 16, 2006, the MRI of his lumbar spine demonstrated degenerative changes at L3-4, L4-5, and L5-S1 with no evidence of central canal stenosis or lateral recess stenosis. The MRI of the right hip demonstrated an intermedullary rod through the proximal portion of the right knee but the rest of the exam was "unremarkable." It was also noted that they thought a "fair amount of his pain may be coming from his right leg length discrepancy." It is noted that Dr. Elliott of Coastal Orthopaedics stated in an office note dated June 13, 2006, that "his hip pain is essentially resolved. I think the leg length discrepancy was causing some of the problems. This leg was corrected by just placing a small gel insert in the right shoe."  The plaintiff has not provided any medical evidence or filed any affidavits that indicate any lack of treatment caused him to suffer any life threatening medical problems. Further, plaintiff has not alleged or proven that delay in outside medical care caused any permanent injury. Plaintiff has not shown more than de minimis pain or injury. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that defendants' motion for summary judgment be granted as it relates to the plaintiff's claims of medical indifference.

Plaintiff presents generally allegations of discrimination but does not clarify what type of discrimination he is asserting. The affidavits he submitted from the other prisoners stated they were seen by outside physicians but do not give support for plaintiff's position. Mr. Thrasher stated that he was transported from JRLDC to Dr. O'Connor's office for treatment of a pre-existing condition but that when Dr. O'Conner referred him for further care, the JRLDC would not give approval

without Mr. Thrasher paying for the treatment. In fact, Mr. Thrasher stated that the JRLDC will not pay for treatment of a pre-existing condition. Mr. Williams stated that Ms. Hipp made an appointment for him to see "his doctor" in Myrtle Beach for his pre-existing medical needs but that he had seen other inmates denied outside medical treatment without funds for payment. It is noted that Mr. Williams said he was seen by his doctor and Mr. Thrasher stated that when he was referred to someone else by Dr. Cooper the JRLDC would not pay. Ms. Hipp submitted her affidavit in which she attests that the JRLDC transports people at the jail to private medical providers with whom they have an established physician/patient relationship prior to incarceration after confirmation by health care staff with the medical provider. Ms. Hipp also averred that both Mr. Thrasher and Mr. Williams were established patients of outside providers prior to their being housed at JRLDC. Hipp attests that the JRLDC provided transportation to the offices of their medical providers but did not pay for any services rendered. As plaintiff has only asserted conclusory allegations with respect to "discrimination", it is recommended that this claim be dismissed and summary judgment granted for the defendants on this issue.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the prison and the prevention of escapes.

12

These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.[3]

### E  QUALIFIED IMMUNITY

Defendants also contend that to the extent plaintiff seeks to proceed against the defendants in their individual capacities, the defendants are entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a

---

[3] To any extent plaintiff seeks injunctive relief, such claim is moot in that plaintiff has filed a change of address with the court on June 14, 2007. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

13

valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue

of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard

which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995).  As discussed above, the plaintiff fails to show that the defendants violated any of his clearly

established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity

in their individual capacity.  Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

## F. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its

15

undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity.  Will, supra at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state.  State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

### G.  JRLDC

Defendants argue that the JRLDC is not amenable to suit under 42 U.S.C. 1983 because inanimate objects, such as detention centers, cannot act under color of state law and hence are not persons subject to suit.

In as much as the complaint requests an award of damages against the J. Ruben Long Detention Center, the Detention Center is not a "person" for purposes of suit under 42 U.S.C. § 1983.  In order to state a claim for damages under § 1983, an aggrieved party must sufficiently allege that he or she was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law."  *See* 42 U.S.C. § 1983; Monroe v. Page, 365 U.S. 167 (1961); *see generally* 5 Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (2002). The JRLDC is a group of buildings or a facility. Inanimate objects such as buildings, facilities, and grounds cannot act under color of state law. Hence, the JRLDC is not a "person" subject to suit under 42 U.S.C. § 1983. *See* Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D. Va. 1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301(E.D. N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Monetary relief requested against the JRLDC cannot be granted.

## H.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III.  CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document #21) for summary

judgment be GRANTED IN ITS ENTIRETY.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 14, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

18